**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOHN ROSATO, Individually and On Behalf of All Others Similarly Situated, ) ) ) | |
| Plaintiff, ) ) ) | Case No. _____ |
| v. ) ) | JURY TRIAL DEMANDED |
| PLANET PAYMENT, INC., CARL J. WILLIAMS, SHANE H. KIM, CAMERON R. M. MCCOLL, JONATHAN KAIDEN, FINTRAX GROUP, FRANKLIN UK BIDCO LIMITED, and FINTRAX US ACQUISITION SUBSIDIARY, INC., ) ) ) ) ) ) ) | CLASS ACTION |
| Defendants. ) | |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on October 26, 2017 (the "Proposed Transaction"), pursuant to which Planet Payment, Inc. ("Planet Payment" or the "Company") will be acquired by Fintrax Group and its affiliates.

2. On October 26, 2017, Planet Payment's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Franklin UK Bidco Limited ("Parent") and Fintrax US Acquisition Subsidiary, Inc. ("Merger Sub," and together with Fintrax Group and Parent, "Fintrax"). Pursuant to the terms of the Merger Agreement, Fintrax commenced a tender offer, set to expire on December 18, 2017, and shareholders of Planet Payment will receive $4.50 in

cash for each share of Planet Payment common stock.

3. On November 13, 2017, defendants filed a Solicitation/Recommendation Statement (the "Solicitation Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Solicitation Statement omits material information with respect to the Proposed Transaction, which renders the Solicitation Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Solicitation Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(e), 14(d), and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Planet Payment common stock.

9. Defendant Planet Payment is a Delaware corporation and maintains its principal

executive offices at 670 Long Beach Blvd., Long Beach, NY 11561. Planet Payment's common stock is traded on the NasdaqCM under the ticker symbol "PLPM."

10. Defendant Carl J. Williams ("Williams") has served as a director of the Company since August 2013, as President since November 2013, and as Chief Executive Officer ("CEO") since February 2014.

11. Defendant Shane H. Kim ("Kim") has served as a director of the Company since April 2011.

12. Defendant Cameron R. M. McColl ("McColl") has served as a director of the Company since January 2006 and as Lead Director since July 2011.

13. Defendant Jonathan Kaiden ("Kaiden") has served as a director of the Company since January 2006.

14. The defendants identified in paragraphs 10 through 13 are collectively referred to herein as the "Individual Defendants."

15. Defendant Parent is a private limited company incorporated under the laws of England and Wales and a party to the Merger Agreement.

16. Defendant Merger Sub is a Delaware corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

17. Defendant Fintrax Group is headquartered in Galway, Ireland, and is an affiliate of Parent and Merger Sub.

## **CLASS ACTION ALLEGATIONS**

18. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Planet Payment (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any

3

defendant.

19. This action is properly maintainable as a class action.

20. The Class is so numerous that joinder of all members is impracticable. As of October 24, 2017, there were approximately 49,995,262 shares of Planet Payment common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

21. Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

22. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

23. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

24. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

**SUBSTANTIVE ALLEGATIONS**

*Background of the Company and the Proposed Transaction*

25. Planet Payment is a leading provider of international payment and transaction processing and multi-currency processing services.

26. The Company provides its services and solutions to merchant locations in twenty-one countries and territories across the Asia Pacific region, North America, South America, the Middle East, Africa, and Europe, primarily through its acquiring bank and processor customers, as well as through its own direct sales force.

27. Planet Payment provides banks and their merchants with innovative services to accept, process, and reconcile electronic payments.

28. The Company's point-of-sale multi-currency payment processing services are designed for merchants in the retail, restaurant, and hospitality environments.

29. Planet Payment also provides payment services for e-commerce and mail and telephone order merchants.

30. The Company's point-of sale and e-commerce services help merchants sell more goods and services to consumers, and together with its ATM services are integrated within the international payment card transaction process enabling its acquiring customers to process and reconcile payment transactions in multiple currencies, geographies, and channels.

31. Planet Payment is a registered third party processor with the major card associations and operates in accordance with industry standards, including the Payment Card Industry ("PCI") and Security Council's Data Security Standards.

32. On October 26, 2017, the Board caused the Company to enter into the Merger Agreement, pursuant to which the Company will be acquired by Fintrax.

33. Pursuant to the terms of the Merger Agreement, shareholders of Planet Payment will receive $4.50 in cash for each share of Planet Payment common stock.

34. The Merger Agreement contains a "no solicitation" provision that prohibits the Individual Defendants from soliciting alternative proposals and constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals. Sections 6.2(a) and (c) of the Merger Agreement provide:

> The Company will not, and shall cause each of its Subsidiaries and the officers and directors of the Company and its Subsidiaries, not to and will instruct, and use commercially reasonable efforts, to cause its representatives not to:
>
> (i) solicit, initiate, endorse, or knowingly encourage or knowingly facilitate the submission or announcement of any Acquisition Proposal or Acquisition Inquiry or any proposals or offers that constitute or would reasonably be expected to lead to an Acquisition Proposal (including by approving any transaction, or approving any Person becoming an "interested stockholder," for purposes of Section 203 of the DGCL);
>
> (ii) furnish any information regarding the Company to any Person in connection with, or in response to, an Acquisition Proposal or Acquisition Inquiry;
>
> (iii) engage in discussions or negotiations with any Person with respect to any Acquisition Proposal or Acquisition Inquiry; or
>
> (iv) approve, recommend or enter into, any letter of intent or similar document, agreement or commitment, or agreement in principle (whether written or oral, binding or nonbinding) with respect to an Acquisition Proposal (other than any confidentiality agreement contemplated by this Section 6.2). . . .
>
> The Company shall, and shall ensure that its representatives, immediately cease and cause to be terminated any existing solicitation of, or discussions or negotiations with, any Person relating to any Acquisition Proposal or Acquisition Inquiry. The Company also agrees that (i) to the extent it has not previously done so, it will promptly request each Third Party that has executed a confidentiality agreement prior to the date of this Agreement in connection with such Person's consideration of a transaction involving, or the acquisition of, the Company or any of its Subsidiaries (or any portion thereof) to return or destroy all confidential information heretofore furnished to such Person or its representatives by or on behalf of the Company or any of its Subsidiaries, (ii) the Company and its Subsidiaries shall not release any Third Party from, or terminate, waive, amend or modify any provision of, or grant permission under, any confidentiality or

standstill provision in any agreement to which the Company or any of its Subsidiaries is a party, unless the Company Board has determined in good faith after consultation with outside legal counsel that the failure to take such action would reasonably constitute a breach of the fiduciary duties of the Company Board, and (iii) the Company shall, and shall cause its Subsidiaries to enforce, to the fullest extent permitted under applicable Law, the provisions of any such agreement.

35. Additionally, the Company must promptly advise Fintrax of any proposals or inquiries received from other parties. Section 6.2(b) of the Merger Agreement states:

> If the Company receives an Acquisition Proposal or Acquisition Inquiry, then the Company shall promptly (and in no event later than twenty-four (24) hours after receipt of such Acquisition Proposal or Acquisition Inquiry) notify Parent in writing of such Acquisition Proposal or Acquisition Inquiry (which notification shall include the identity of the Person making or submitting such Acquisition Proposal or Acquisition Inquiry and the material terms and conditions thereof), and shall thereafter keep Parent reasonably informed of any material change to the terms of such Acquisition Proposal or Acquisition Inquiry.

36. Moreover, the Merger Agreement contains a highly restrictive "fiduciary out" provision permitting the Board to change its recommendation of the Proposed Transaction under extremely limited circumstances, and grants Fintrax a "matching right" with respect to any "Superior Proposal" made to the Company. Section 2.3(d) of the Merger Agreement provides:

> Notwithstanding anything to the contrary contained in this Agreement, at any time prior to the Acceptance Time, the Company Board may:
>
> (i) make a Change in Recommendation in response to an Acquisition Proposal and/or cause the Company to terminate this Agreement pursuant to Section 8.1(f) to enter into an Alternative Acquisition Agreement concerning an Acquisition Proposal if (and prior to taking such action): (A) such Acquisition Proposal did not result from a material breach of Section 6.2(a); (B) the Company Board determines in good faith, after consultation with the Company's outside legal counsel and its financial advisor, (1) that such Acquisition Proposal would, if this Agreement or the Offer were not amended or an alternative transaction with Parent were not entered into, constitute a Superior Proposal and (2) that in light of such Acquisition Proposal, a failure to make a Change in Recommendation and/or to cause the Company to terminate this Agreement pursuant to Section 8.1(f) to enter into an Alternative Acquisition Agreement concerning such Acquisition Proposal would be inconsistent with the Company Board's fiduciary obligations to the Company's stockholders under applicable Laws; (C) the Company delivers

7

to Parent a written notice (the "Superior Proposal Notice") stating that the Company Board intends to take such action and (in the event the Company Board contemplates causing the Company to terminate this Agreement and enter into an Alternative Acquisition Agreement, including a copy of such Alternative Acquisition Agreement) specifying in reasonable detail the reasons therefor, including all required information under Section 6.2(b) (which notice shall not constitute a Change in Recommendation); (D) during the five (5) Business Day period commencing on the date of Parent's receipt of such Superior Proposal Notice (as may be renewed pursuant to clause "(F)" below, the "Notice Period"), the Company shall, and shall cause its financial advisors, legal counsel and its representatives to, negotiate with Parent in good faith during the Notice Period (to the extent Parent desires to negotiate) regarding a possible amendment of this Agreement or the Offer or a possible alternative transaction so that the Acquisition Proposal that is the subject of the Superior Proposal Notice ceases to be a Superior Proposal; (E) after the expiration of the Notice Period, the Company Board shall have determined in good faith, after consultation with its outside legal counsel and its financial advisor, and after taking into account any amendments to this Agreement and the Offer that Parent and Acquisition Sub have irrevocably agreed in writing to make as a result of the negotiations contemplated by clause "(D)" above, that (1) such Acquisition Proposal constitutes a Superior Proposal, and (2) the failure to make a Change in Recommendation and/or terminate this Agreement pursuant to Section 8.1(f) to enter into such Alternative Acquisition Agreement would be inconsistent with the Company Board's fiduciary obligations to the Company's stockholders under applicable Laws; and (F) in the event of any material amendment to the terms of any Superior Proposal (including any financial terms), the Company shall, in each case, have delivered to Parent an additional notice consistent with that described in clause "(C)" above and a new Notice Period under this Section 2.3(d)(i) shall commence, during which time the Company shall be required to comply with the requirements of this Section 2.3(d)(i) anew with respect to such additional notice, except that such Notice Period shall be two (2) Business Days instead of five (5) Business Days[.]

37.    The Merger Agreement also provides for a "termination fee" of $7.7 million payable by the Company to Fintrax if the Individual Defendants cause the Company to terminate the Merger Agreement.

38.    By agreeing to all of the deal protection devices, the Individual Defendants have locked up the Proposed Transaction and have precluded other bidders from making successful competing offers for the Company.

39.    Additionally, Planet Payment's directors and executive officers and certain

8

shareholders, representing an aggregate of approximately 28% of the Company's outstanding shares, have entered into support agreements with Fintrax pursuant to which they have agreed to tender their shares into the tender offer. Accordingly, such shares are already locked up in favor of the Proposed Transaction.

*The Solicitation Statement Omits Material Information, Rendering It False and Misleading*

40. Defendants filed the Solicitation Statement with the SEC in connection with the Proposed Transaction.

41. The Solicitation Statement omits material information regarding the Proposed Transaction, which renders the Solicitation Statement false and misleading.

42. First, the Solicitation Statement omits material information regarding the Company's financial projections and the analyses performed by the Company's financial advisor, Opinion of FTP Securities LLC ("FTP").

43. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

44. With respect to the Company's financial projections, the Solicitation Statement fails to disclose: interest expense; interest income; income taxes; net operating profit; depreciation and amortization; the other items management "believes affect the comparability of operating results"; and a reconciliation of all non-GAAP to GAAP metrics.

45. With respect to FTP's *Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose the terminal values for Planet Payment.

46. With respect to FTP's *Selected Precedent Transactions Analysis*, the Solicitation Statement fails to disclose the individual multiples and financial metrics for the transactions observed by FTP in the analysis.

47. The omission of this material information renders the Solicitation Statement false and misleading, including, *inter alia*, the following section of the Solicitation Statement: "The Solicitation or Recommendation."

48. Second, the Solicitation Statement omits material information regarding potential conflicts of interest of the Company's officers and directors.

49. Specifically, the Solicitation Statement fails to disclose the timing and nature of all communications regarding future employment and directorship of the Company's officers and directors, including who participated in all such communications.

50. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

51. The omission of this material information renders the Solicitation Statement false and misleading, including, *inter alia*, the following section of the Solicitation Statement: "The Solicitation or Recommendation."

52. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Planet Payment's stockholders.

## COUNT I

### (Claim for Violation of Section 14(e) of the 1934 Act Against Defendants)

53. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

54. Section 14(e) of the 1934 Act states, in relevant part, that:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

55. Defendants disseminated the misleading Solicitation Statement, which contained statements that, in violation of Section 14(e) of the 1934 Act, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not misleading.

56. The Solicitation Statement was prepared, reviewed, and/or disseminated by defendants.

57. The Solicitation Statement misrepresented and/or omitted material facts in connection with the Proposed Transaction as set forth above.

58. By virtue of their positions within the Company and/or roles in the process and the preparation of the Solicitation Statement, defendants were aware of this information and their duty to disclose this information in the Solicitation Statement.

59. The omissions in the Solicitation Statement are material in that a reasonable shareholder will consider them important in deciding whether to tender their shares in connection with the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available.

60. Defendants knowingly or with deliberate recklessness omitted the material information identified above in the Solicitation Statement, causing statements therein to be

11

materially incomplete and misleading.

61. By reason of the foregoing, defendants violated Section 14(e) of the 1934 Act.

62. Because of the false and misleading statements in the Solicitation Statement, plaintiff and the Class are threatened with irreparable harm.

63. Plaintiff and the Class have no adequate remedy at law.

## COUNT II

**(Claim for Violation of 14(d) of the 1934 Act Against Defendants)**

64. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

65. Section 14(d)(4) of the 1934 Act states:

Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

66. Rule 14d-9(d) states, in relevant part:

Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

Item 8 requires that directors must "furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading."

67. The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits the material facts set forth above, which renders the Solicitation Statement false and/or misleading.

68. Defendants knowingly or with deliberate recklessness omitted the material information set forth above, causing statements therein to be materially incomplete and

12

misleading.

69. The omissions in the Solicitation Statement are material to plaintiff and the Class, and they will be deprived of their entitlement to make a fully informed decision with respect to the Proposed Transaction if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

70. Plaintiff and the Class have no adequate remedy at law.

## COUNT III

### (Claim for Violation of Section 20(a) of the 1934 Act Against the Individual Defendants and Fintrax)

71. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

72. The Individual Defendants and Fintrax acted as controlling persons of Planet Payment within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Planet Payment and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

73. Each of the Individual Defendants and Fintrax was provided with or had unlimited access to copies of the Solicitation Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

74. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have

had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Solicitation Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly connected with and involved in the making of the Solicitation Statement.

75. Fintrax also had direct supervisory control over the composition of the Solicitation Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Solicitation Statement.

76. By virtue of the foregoing, the Individual Defendants and Fintrax violated Section 20(a) of the 1934 Act.

77. As set forth above, the Individual Defendants and Fintrax had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.

78. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

79. Plaintiff and the Class have no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays for judgment and relief as follows:

A. Enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to file a Solicitation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(e), 14(d), and 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: November 20, 2017         **RIGRODSKY & LONG, P.A.**

By: */s/ Timothy J. MacFall*
Timothy J. MacFall
825 East Gate Boulevard, Suite 300
Garden City, NY 11530
(516) 683-3516

Brian D. Long
Gina M. Serra
2 Righter Parkway, Suite 120
Wilmington, DE 19803
(302) 295-5310

*Attorneys for Plaintiff*